**LOCAL 32B, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL–CIO, Plaintiff,**

v.

**SAGE REALTY CORP., and the William Kaufman Organization, et al., Defendants.**

No. 75 Civ. 2525.

United States District Court, S. D. New York.

June 13, 1975.

Arnold R. Streit, Israelson & Streit, New York City, for plaintiff.

Rosenman, Colin, Kaye, Petschek, Freund & Emil, Maurice H. Goetz, Arthur Linker, Joseph L. Getraer, New York City, for all defendants except Sage Realty.

**1154**

Dublirer, Haydon & Straci, Harold Dublirer, New York City, for Sage Realty Corp.

## MEMORANDUM DECISION

GAGLIARDI, District Judge.

This is an application for a preliminary injunction in connection with an allegedly arbitrable dispute arising under a collective bargaining agreement ("Agreement") between the Realty Advisory Board on Labor Relations, Inc. ("RAB") and Local 32B, Service Employees International Union, AFL-CIO ("Local 32B").

The employees represented by Local 32B in this action are a group of approximately 25 building and maintenance workers employed at premises 77 Water Street and 127 John Street, New York, New York. Defendant Sage Realty Corp. ("Sage") is a New York corporation engaged in the operation and maintenance of premises 127 John Street and 77 Water Street. Defendants Robert Kaufman and Melvyn Kaufman are both officers and stockholders of Sage. Robert Kaufman is one of the owners of the fee of 127 John Street; Melvyn Kaufman is one of the owners of the fee of 77 Water Street. Prior to June 1, 1975, defendant Prudential Building Maintenance Corp. was the building cleaning and maintenance contractor at premises 127 John Street, and defendant Allied Maintenance Corp. was the cleaning and maintenance contractor at premises 77 Water Street. Both contracts were terminated as of May 31, 1975 and, effective June 1, 1975, Monahan Commercial Cleaners, Inc. became the cleaning and maintenance contractor at 127 John Street and 77 Water Street.

Plaintiff seeks a preliminary injunction restraining certain of the defendants from committing alleged violations of the "sub-contracting" and "no lockout" provisions of the Agreement and directing them to arbitrate the issues arising out of the alleged violations. Plaintiff asserts that the defendants are parties to and bound by the terms of the Agreement by reason of their alleged membership in the RAB, an organization which purports to negotiate labor contracts on behalf of its members. Defendants contend that they are not now nor ever were members of the RAB and, therefore, are not bound by the Agreement. For the reasons set forth below, the court agrees with defendants' contention.

Beginning in about 1970, Sage engaged Cushman & Wakefield, Inc. ("C & W") as renting and managing agent of the two buildings in question. C & W operated the buildings through Cushfield Maintenance Corp., its wholly owned subsidiary. C & W makes application for membership to the RAB with respect to each building it manages, and only notifies the building owners of such application in cases where the employees in the building are the employees of the owner. In cases where the employees in the building are employees of the owner, C & W requires authorization from the owner prior to submitting an application on the owner's behalf. Inasmuch as C & W's contract with Sage specifically provided that the employees in premises 127 John Street and 77 Water Street were to be the employees of C & W and not Sage, the defendants were not notified of C & W's application to the RAB with respect to these two buildings.

On September 1, 1974, Sage terminated C & W as managing agent, and assumed active management of the two buildings. Neither Sage nor the Kaufmans ever made an application for membership in the RAB with respect to these buildings. Plaintiff's claim of defendants' membership in the RAB is based upon the contention that C & W's application to the RAB was made on behalf of the defendants and that two $30.00 checks sent by Sage to the RAB in October 1974, allegedly in payment of RAB semi-annual dues invoices sent to C & W in late August 1974, continued or ratified this membership. The evi-

dence, however, is that C & W applied for membership in the RAB solely in its own behalf as employers and as operators of the buildings at 127 John and 77 Water. There is no proof that C & W had any authority as agents to apply for membership in the RAB on behalf of the defendants. Moreover, there is no proof that either C & W or any of the defendants intended the applications to be made on defendants' behalf.

The court accepts the testimony of Albert Braunstein, Controller of Sage, and concludes that the two semi-annual RAB dues invoices were paid by Sage inadvertently. The payments were not made with any intention to continue or ratify defendants' alleged RAB membership. C & W's practice was to pay bills received after the 25th of any month the following month. Because C & W's contract with Sage was terminated on August 31, 1974, and because the RAB dues invoices were received after the 25th of August, the invoices were marked approved and forwarded to Sage. These bills, having been received in the normal course from C & W, together with a dozen or more other bills, were paid as a routine matter by the disbursing department of Sage. When it came to the attention of Sage in January 1975 that the RAB listed Sage as a member, Sage advised the RAB by the letter that ". . . you are in error. We are not now nor do we intend to be members of the [RAB] . . . ." Other than the inadvertent payment of dues by Sage in September 1974, there is no evidence of membership; to the contrary, defendants' actions and conduct have been consistent with non-membership.

On the proof presented, the court concludes that plaintiff has not met its burden of showing defendants' membership in the RAB. There thus appearing little or no likelihood that plaintiff might ultimately establish that the defendants are bound by the terms of the Agreement, the plaintiff's motion for a preliminary injunction is denied.

So ordered.